## CLAXTON v. MUNSEY TRUST CO. et al.

(Court of Appeals of District of Columbia. Submitted January 11, 1924. Decided March 3, 1924. Rehearing Denied March 22, 1924.)

### No. 3995.

Contracts ☜90—Evidence held to show that plaintiff was indebted for amount involved in agreement.

In a suit to rescind an agreement under which plaintiff's employer obtained property alleged to have been procured from plaintiff through duress, coercion, and undue influence, evidence that plaintiff was a mature man, and signed an affidavit admitting conversion of his employer's money, and did not deliver this affidavit until nearly two months later, *held* to show that plaintiff was indebted to his employer for the amount involved in the agreement.

Appeal from the Supreme Court of the District of Columbia.

Suit by Arthur B. Claxton against the Munsey Trust Company and another. From a decree dismissing the bill, complainant appeals. Affirmed.

C. T. Clayton, of Washington, D. C., for appellant.

Wilton J. Lambert and R. H. Yeatman, both of Washington, for appellees.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. This case and Munsey Trust Co. v. Minker, — App. D. C. —, 296 Fed. 991, this day decided, are companion cases, which arose out of substantially the same state of facts. Claxton, charged by the Munsey Trust Company with being indebted to it for money misappropriated, procured one Minker to execute a collateral note for $10,500, payable to the company, on account of the indebtedness, and at the same time Claxton delivered to the company as collateral to the note certain promissory notes, certificates, and insurance policies. Claiming that these instruments were procured from him, not voluntarily, but through duress, coercion, and undue influence exercised by the company, he instituted the present suit to have rescinded the agreement under which the company obtained the property and for other relief. From a decree dismissing his bill, he appeals.

At the time of the transaction referred to in the bill Claxton was about 41 years of age and was treasurer of the company. Prior to that he had been employed by another trust company for 11 years. His duties as treasurer consisted in supervising the work of the company, in connection with other officers. An officer called Claxton's attention to the account of one Thompson, and said that he thought it was Claxton's account. At first the latter denied this, but later admitted it, and said he "was tired of the whole thing, and wanted to tell the story from the beginning to the end." Later Claxton made a pencil memorandum of all sums for which he felt he was personally responsible, and delivered it to an officer of the company. In it were items aggregating $4,500, which he said he had received as agent of the company, but had

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not entered on its records. There was in addition an item of $6,000 with respect to which he first said he had no explanation, but later stated that it represented sums diverted to his own use. These disclosures were followed by a meeting of the directors of the company, at which Claxton was present. Mr. Lambert, counsel for the company, questioned him relative to the items for which he admitted responsibility, and then prepared an affidavit embodying them, for Claxton's signature. He signed and swore to the affidavit. In it he admitted that he had appropriated to his own use several items, aggregating much more than $10,500, the amount for which the collateral note was given. The affidavit further stated that no part of the money thus taken had been paid back.

Claxton relies upon six pieces of testimony to establish his claim that he was induced by threats and duress to deliver the instruments which he seeks to have returned to him. They are: (1) Minker's, that Henry, vice president of the company, had said to him that he felt sorry for Claxton, but that, if some one did not make his account good, it would prove very serious for him. (2) Mrs. Claxton's, that Henry had told her there was only one thing for Claxton to do to save his character and reputation, and that was for him to turn over his stuff to the company, and thereby make settlement for the $10,500. (3) Claxton's, that Dewart, general manager of the company, said in his presence that he was in a position to put him in jail for 40 years, and then went over all the transactions, winding up by inquiring of a Mr. Lucas, who was present, what he thought "the department would think of that," meaning the transactions which he had mentioned. (4) Claxton's, that between November 13 and December 19 Henry called him over the telephone and said that he would have to make a settlement at once or the company would refer the matter to the district attorney's office. (5) Claxton's, that in a conversation had on December 20 it was forcibly brought out that, if he did not make a settlement of the $10,500 item, the company would refer the matter to the district attorney and would have been indicted. (6) Claxton's, that one Lucas declared that if he (Claxton) did not make a settlement the matter was going to be referred to the district attorney's office.

With respect to these threats, the first and second were not communicated to Claxton; therefore they could not have influenced his conduct. The others were all denied; the third by Dewart, and he is supported by Lucas and one Lomerson who were present; the fourth by Henry; the fifth by Lucas, Henry, and Sisk; and the sixth by the last-named parties. Relative to all except the fourth, the preponderance of the testimony was greatly against Claxton. As to the fourth, when all the circumstances are considered, we think Henry's testimony is more credible than Claxton's.

Claxton was a mature business man. He signed the affidavit, admitting his peculations, on the 13th of November, 1917, and did not deliver the instruments which he asks to have returned to him until the 11th of January, or nearly two months afterwards. In the meantime he had ample opportunity to determine his rights in the premises, and to prepare his defense against the charges made, if he was not guilty;

but he did nothing in that direction. Instead he delivered the papers, as if he were guilty. This fact is worthy of consideration in determining whether or not he was coerced into acknowledging and securing a debt which, as he now claims, he did not owe. We are satisfied he was indebted to the company in the sum for which the collateral note was given.

It follows, in our opinion, that the court below was fully justified in its conclusion that he had failed to establish the cause of action alleged in the bill. This being so, it is unnecessary to examine the authorities brought to our attention by him for the purpose of establishing that the acts complained of constitute duress and undue influence. Since he failed to prove the acts, it would be vain to attempt an evaluation of their legal efficacy.

The decree of the lower court is affirmed, with costs.

Affirmed.